PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES WILLIAM MCHAN,

        *Petitioner-Appellant,*

v.

COMMISSIONER, of the Internal
Revenue,

        *Respondent-Appellee.*

No. 07-1834

Appeal from the United States Tax Court
(Tax Ct. No. 92-550)

Argued: December 3, 2008

Decided: February 27, 2009

Before WILKINSON, DUNCAN, and AGEE,
Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

## COUNSEL

**ARGUED:** Andrew Brady Banzhoff, Asheville, North Carolina, for Appellant. Curtis Clarence Pett, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Nathan J. Hochman, Assistant Attorney General, Kenneth L. Greene, Tax Division, UNITED

STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

DUNCAN, Circuit Judge:

Appellant is a convicted drug dealer who failed to report income from his illegal activities on his federal income tax returns. The Internal Revenue Service issued a notice of deficiency and the tax court below adjudicated Appellant's income and tax liability. On appeal from the tax court, Appellant challenges the tax court's determination of his illegal income, argues that the tax court erred in admitting grand jury testimony into evidence, and argues that the tax court erred in denying him a new trial. As explained below, we find no error and affirm.

I.

Appellant, Charles William McHan, participated in the illegal purchase and sale of marijuana from 1984 through 1988. He failed to report the income from his illegal activities on his federal income tax returns. This gave rise to two separate proceedings against McHan: a criminal prosecution, which included a criminal forfeiture count, and a civil tax collection pursued by the Internal Revenue Service ("IRS"). Although this appeal arises only from the latter, a discussion of the criminal prosecution is necessary to its analysis.

McHan was indicted in 1990 by a federal grand jury on several drug-related counts, including a criminal forfeiture count pursuant to 21 U.S.C. § 853, which provides that individuals convicted of certain drug offenses forfeit to the United States any "proceeds" obtained as a result of such offense. McHan was convicted on all counts.

After a separate hearing on the criminal forfeiture count, the district court entered a forfeiture judgment of $395,670 against McHan. To calculate this amount, the district court first determined the total proceeds from McHan's marijuana sales ($1,489,350) and then deducted costs ($857,030) and a portion of the proceeds attributed to a partner ($236,650). On appeal, we rejected the district court's calculation of the forfeiture amount and vacated the sentence. *United States v. McHan*, 101 F.3d 1027, 1041-43 (4th Cir. 1996). We held that the term "proceeds" in the forfeiture statute did not refer to net *profit*, as the district court reasoned, but instead referred to gross *proceeds*. *Id.*[1]

At roughly the same time federal prosecutors were building the criminal case against McHan, the IRS began investigating McHan for tax evasion. In 1991, the IRS issued McHan a notice of deficiency. In it, the IRS determined that McHan and his wife had understated their income in joint federal income tax returns filed in 1985 and 1986.[2] The McHans' returns, which were prepared by a tax professional, reported adjusted gross income of $122,352 in 1985, $180,687 in 1986, and a loss of $332,696 in 1987. Those figures did not, however, include profits from McHan's drug transactions. Nor did the McHans provide any documentation regarding such transactions to their tax return preparer. In issuing McHan's notice of deficiency, the IRS reconstructed McHan's income, calculating that McHan realized unreported profits on marijuana transactions of $622,260 in 1985, $93,275 in 1986, and $200,910 in 1987.[3]

---

[1]The forfeiture judgment has since been satisfied. The government also filed a civil forfeiture suit against McHan in 1990, but that suit was dismissed.

[2]McHan's wife was a party to the tax court proceedings below but is not a party before this court. She was not implicated in any of the illegal drug transactions.

[3]Although the notice of deficiency referred to years 1985 and 1986, reconstructed income from 1987 was relevant because the McHans' tax returns for 1985 and 1986 included carry-backs from a net operating loss claimed for that year.

McHan timely challenged the notice of deficiency and the matter came before the tax court. McHan moved for summary judgment arguing, inter alia, that the earlier criminal forfeiture judgment had already established the amount of his illegal profits and that the IRS was collaterally estopped from litigating the amount a second time. The tax court rejected that argument, holding that collateral estoppel did not apply because the burden of proof was different in the two proceedings. *McHan v. Comm'r*, T.C.M. 1997-139, 1997 WL 119805, at *3 (U.S. Tax Ct. 1997).

In May 1999 the case was assigned to a Special Trial Judge, who conducted a four-day trial. *See* 26 U.S.C. § 7443A. According to McHan, the IRS "did not put on evidence that was materially different than that presented in the criminal forfeiture case." Appellant's Br. at 7.[4] That evidence included the grand jury testimony of Paul Leroy Cunningham, who had been a witness in McHan's criminal prosecution. Because Cunningham had died shortly after his grand jury testimony, his testimony was read into the record in McHan's criminal trial.

The Special Trial Judge filed his recommendations with the tax court on July 7, 2005. McHan objected to the findings and moved for a new trial, arguing that the IRS waited until the third day of the trial to disclose the calculations underlying the notice of deficiency. He also argued that the IRS improperly disclosed grand jury materials in violation of Federal Rule of Criminal Procedure 6(e).

In April 2006, the tax court issued a memorandum opinion. *See McHan v. Comm'r*, T.C.M. 2006-84, 2006 WL 1073433 (U.S. Tax Ct. 2006). The tax court found that the IRS presented substantial evidence of the transactions at issue and

---

[4]McHan asserts: "It cannot be disputed that the evidence presented in the Tax Court trial was derivative of and included the evidence presented at the criminal and criminal forfeiture trials." Appellant's Br. at 8.

that the IRS's deficiency calculations were entitled to "the usual presumption of correctness" that applies when the taxpayer fails to maintain adequate records. *See Cebollero v. Comm'r*, 967 F.2d 986, 990 (4th Cir. 1992). Nevertheless, in response to McHan's objections to the Special Trial Judge's recommended findings, the tax court did make several adjustments that were favorable to McHan. First, some $34,500 in gross profit from a 1985 transaction was subtracted from that year's income based on the IRS's concession that the disputed transaction did not occur. Second, the tax court allowed losses of $73,000 and $42,000 in years 1986 and 1987, respectively, from unprofitable marijuana transactions in Florida. Those losses had previously been omitted from the IRS's calculations. Third, the tax court rejected the IRS's claim of an additional transaction in 1985 that was not included in the original notice of deficiency, concluding that the IRS had presented insufficient evidence of that transaction. Fourth, the tax court rejected the IRS's attempt to add back certain other costs as improperly deducted. Taking account of these adjustments, the tax court determined that the McHans had underreported their income by $587,760 in 1985 and $20,275 in 1986.[5]

This appeal followed.

## II.

We have jurisdiction over appeals from the tax court under 26 U.S.C. § 7482. We review decisions of the tax court "on the same basis as decisions in civil bench trials in United States district courts." *Waterman v. Comm'r*, 179 F.3d 123, 126 (4th Cir. 1999). That is, we review findings of fact for clear error and questions of law de novo. *Id.*

---

[5]In addition to its findings regarding underreported income, the tax court also imposed penalties for tax underpayments due to fraud, *see* 26 U.S.C. § 6653(b)(1)-(2), and to substantial understatement of income, *see* 26 U.S.C. § 6661. McHan does not challenge these penalties on appeal.

McHan makes five arguments on appeal. First, McHan argues that the amount of his illegal income had previously been adjudicated in the criminal forfeiture action and, under the doctrine of collateral estoppel, the tax court was constrained to adopt the findings regarding McHan's income in the forfeiture judgment. Second, McHan argues that the IRS's income calculations were not entitled to the usual presumption of correctness because they varied from the findings of the forfeiture judgment. Third, McHan argues that the tax court erred in denying him a new trial because the IRS failed to disclose the calculations underlying the notice of deficiency until the third day of the trial. Fourth, McHan argues that he is entitled to a new trial because the Special Trial Judge who conducted the trial waited over six years before filing his recommendations with the tax court. Finally, McHan argues that the tax court erred in admitting grand jury testimony into evidence in violation of Federal Rule of Criminal Procedure 6(e). We address each argument in turn.

A.

We first address McHan's collateral estoppel argument. McHan argues that the amount of his illegal income had already been adjudicated in the criminal forfeiture action and that, through collateral estoppel, the tax court was constrained to accept those findings. We reject this argument.

The doctrine of collateral estoppel precludes serial litigation of discrete issues of fact in some situations. It is well settled, however, that the doctrine only applies where (1) the "identical issue" (2) was actually litigated (3) and was "critical and necessary" to a (4) "final and valid" judgment (5) resulting from a prior proceeding in which the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (citation and quotation marks omitted); *see also S. Bancorporation, Inc. v. Comm'r*, 847 F.2d 131, 136 n.5 (4th Cir. 1988). The doctrine does not apply

"where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first." *Collins*, 468 F.3d at 217-18. Nor does the doctrine apply when the party against whom the doctrine is invoked had the burden in the first proceeding, but the party seeking to invoke the doctrine has the burden in the second proceeding. Restatement (2d) of Judgments § 28(4).

Here, it is undisputed that the burdens in the criminal forfeiture proceeding and in the tax court not only were different but also ran in different directions. In the criminal forfeiture proceeding, the government had the burden of proof beyond a reasonable doubt. In the tax court, McHan had the burden of proof by a preponderance of the evidence.[6]

Nevertheless, McHan urges us to avoid a "mechanical application" of this rule. McHan suggests that most cases applying the rule are ones in which the government loses in a criminal trial, but then is given a second bite at the apple under a lower burden of proof in a subsequent civil case. McHan argues that, because the government *prevailed* in the criminal forfeiture trial, it ought to be held to the factual findings of that judgment. *See* Appellant's Br. at 10-11. McHan misunderstands the principle at work. The question is not whether a party won or lost in the prior proceeding. Rather, the question is whether the party that would litigate an issue a second time would have the advantage of a more favorable burden of proof in the second proceeding. *Collins*, 468 F.3d at 217-18. Here, we find nothing incongruous about the government, having first prevailed in the criminal trial, later securing a more favorable factual determination under the more favorable burden of proof in the subsequent civil trial.

---

[6]In a tax proceeding, the taxpayer bears the burden of overcoming the presumption of correctness afforded to the IRS's reconstruction of unreported and undocumented income. *Cebollero*, 967 F.2d at 990.

Further, the issue on which preclusion is sought is not the same issue that was actually litigated in the prior proceeding. The tax court determined McHan's *adjusted gross income* from the illegal transactions. This amount was based on the proceeds from the illegal transactions, less costs incurred. *See McHan*, 2006 WL 1073433. The amount of the criminal forfeiture, however, was based exclusively on gross *proceeds* without regard to costs.

In addition, we examined the critical difference between proceeds and income (or profit) in 1996 when we considered McHan's criminal forfeiture judgment on appeal. *McHan v. Comm'r*, 101 F.3d 1027, 1043 (4th Cir. 1996). In that published opinion, we vacated the district court's initial forfeiture judgment because it inappropriately accounted for costs in calculating McHan's proceeds. *Id.* at 1043, 1045. We held that gross "proceeds"—and not profit—was the relevant basis for a forfeiture judgment under 21 U.S.C. § 853. *Id.* at 1043. Even though the district court did initially make findings regarding costs that would arguably be relevant to the tax court's determination of adjusted gross income, those findings were neither "critical and necessary" to the forfeiture amount then at issue, nor were they part of a "final and valid" judgment, such as would be required for collateral estoppel to obtain. *Collins*, 468 F.3d at 217.

## B.

Next, McHan takes issue with the tax court's application of the presumption of correctness to the IRS's determinations of McHan's income. Where, as here, a taxpayer fails to maintain adequate records of income, the IRS is authorized to reconstruct the taxpayer's income in order to determine the amount of any deficiency. *Cebollero*, 967 F.2d at 989. The IRS's determinations are entitled to a presumption of correctness, meaning that "the taxpayer bears the burden of proving it wrong." *Id.* at 990 (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The IRS is not given free rein, however: the tax-

payer can rebut the presumption of correctness by proving, by a preponderance of the evidence, that the IRS's income determination is arbitrary or erroneous. *Cebollero*, 967 F.2d at 992. The tax court's determination of whether the taxpayer has met this burden is reviewed for clear error. *Id.*

McHan acknowledges that he had the burden of rebutting the presumption that the IRS's calculations were correct. However, McHan asserts that he met this burden "simply by referring the Tax Court to the criminal forfeiture judgment." Appellant's Br. at 13. That is not enough. As we noted in rejecting McHan's collateral estoppel argument, the burden of proof was higher in the criminal forfeiture proceeding, and there is nothing incongruous with the government securing a more favorable civil judgment under a lower burden of proof.

Separately, relying in part on the criminal forfeiture judgment's reference to a "criminal enterprise," McHan claims that the tax court "simply ignored" evidence of his "partnership" with another drug dealer and that a portion of the income attributed to McHan in 1985 ought to have instead been attributed to that partner. *See* Appellant's Br. 15-17. But McHan did not raise this argument in the tax court. Instead, he testified that he received *no* income whatsoever from the transactions. McHan testified that he had "never been in the drug business because when you're in business, you're in something to make a profit" and that he only participated in the transactions to help out his friends. J.A. 207-08. The tax court rejected McHan's altruistic-drug-dealer theory, reasoning that "[c]ommon sense would dictate the conclusion that anyone who is in an illegal and dangerous business such as the dealing of drugs would demand a very large profit for his enormous risks." *McHan*, 2006 WL 1073433 at *7 (quotations and citation omitted). We agree and find no clear error in the tax court's determination that McHan failed to meet his burden of rebutting the presumption of correctness. *Cebollero*, 967 F.2d at 992.

C.

McHan also challenges the tax court's denial of his motion for a new trial. We review a tax court's denial of a motion for a new trial for abuse of discretion. *Baltimore & O.R. Co. v. Comm'r*, 78 F.2d 460, 465 (4th Cir. 1935).

McHan, without citing any authority, argues that he was entitled to a new trial because he was "unfairly surprised" and "materially prejudiced" when the IRS waited until three days into the trial to demonstrate the calculations underlying the notice of deficiency. Appellant's Br. at 17-18.

However, to support his collateral estoppel argument, McHan maintained to the contrary—that "the evidence adduced [in the tax court] was derivative from, and substantially the same" as that produced in the preceding criminal trial. Appellant's Br. at 14. McHan cannot have it both ways. He cannot argue that he was "surprised" by the presentation of evidence he himself labeled as "substantially the same" as that presented in his criminal trial years earlier.[7] And McHan points to no evidence used to support the IRS calculations underlying the notice of deficiency that was not previously used in the criminal trial. Accordingly, we hold that the tax court did not abuse its discretion in denying McHan's motion for a new trial on these grounds.

D.

McHan next argues for a new trial based on the six-year time period between the trial conducted by the Special Trial Judge in May 1999 and the filing of the Special Trial Judge's

---

[7]Further, as the tax court noted "at both his criminal trial and [in the tax court, McHan] generally admitted to his involvement in the marijuana transactions" and "for the most part [did] not dispute certain facts relied on by [the IRS] in calculating" McHan's income. *McHan*, 2006 WL 1073433 at *7.

recommendations with the tax court in July 2005. McHan believes this delay was unreasonable and argues that Rule 183(b) of the Rules of Tax Court includes a timeliness requirement. Although McHan styles this argument as one challenging the tax court's denial of his motion for a new trial, he does not appear to have raised this argument in his motion for a new trial below. *See* J.A. 1091-1102. Out of an abundance of caution, we address it nevertheless.

Tax Court Rule 183(b) provides, in pertinent part:

> After all the briefs have been filed by all the parties . . . the Special Trial Judge shall file recommended findings of fact and conclusions of law . . . in accordance with Rule 21.

Tax Ct. R. 183(b). Rule 21 deals with methods of service, not deadlines. *See* Tax Ct. R. 21. Appellant cites no authority for the proposition that Rule 183(b) imposes a timeliness requirement on when Special Trial Judges must file their findings. The plain text of Rule 183(b) includes no such requirement, and we decline to create one.

### E.

Lastly, McHan argues that the tax court improperly admitted grand jury materials in violation of Federal Rule of Criminal Procedure 6(e). Evidentiary rulings of the tax court are reviewed for abuse of discretion. *See Waterman*, 179 F.3d at 126 ("We review decisions of the United States Tax Court on the same basis as decisions in civil bench trials in United States district courts."); *cf. Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006) (applying the abuse-of-discretion standard in reviewing an evidentiary ruling in a civil bench trial).

Federal Rule of Criminal Procedure 6(e) upholds the traditional secrecy of grand jury materials "to the extent and as

long as necessary to prevent unauthorized disclosure." Fed. R. Crim. P. 6(e)(6). However, it is a "common-sense proposition that secrecy is no longer 'necessary' when the contents of grand jury matters have become public." *In re Grand Jury Subpoena*, 438 F.3d 1138, 1140 (D.C. Cir. 2006). Here, McHan does not dispute that substantially all of the IRS's evidence in the tax court, including the grand jury testimony of Paul Leroy Cunningham, had already become part of the public record when it was admitted into evidence during McHan's earlier criminal trial. Thus, we find no abuse of discretion in the tax court's admission of that evidence.

## III.

For the foregoing reasons, the opinion below is

*AFFIRMED*.